### Johnson et al. v. Johnson et al.

Nov. 24, 1942.

176

Hiram H. Owens for appellants.

V. A. Jordan and J. D. Tuggle for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This litigation involves an attempt upon the part of the older brothers and sisters of Elsie Cooper Johnson to have set aside two deeds under which their mother, Sarah Ann Cooper, conveyed two small tracts of land to her, upon the charge that the conveyances had been obtained fraudulently. The father, G. M. Cooper, who died in 1937, joined in the deeds. The appellees, plaintiffs below, sought also to have the estates of their parents settled. By way of counterclaim Elsie Cooper Johnson and her husband denied that the conveyances had been obtained by fraud and asked that a third tract of land belonging to the mother at the time of her death in December, 1934, and containing some 80 acres, be sold and the proceeds divided among the heirs; and also that the estates of both the mother and the father be settled finally. The chancellor adjudged that the deeds be set aside because of the mental condition of G. M. Cooper at the time he signed them; that Elsie Cooper Johnson be awarded $400 for her services in caring for her mother and father; and that all of the property of both parents be sold and the proceeds divided among the heirs after the payment of debts.

We are asked to reverse the judgment primarily on the ground that the chancellor erroneously set aside the

deeds. It is necessary, therefore, that we review brief-ly the circumstances surrounding the conveyances.

Elsie was the youngest of the eight Cooper children. All of the children, except Elsie, seem to have left home several years prior to the death of their mother. Mrs. Cooper was in poor health for several years before she died, and Mr. Cooper was failing physically and mentally for several years prior to his death. Elsie was 22 years of age when her mother died. She had no one to assist her in caring for her parents and doing the work about the Cooper home. The first deed was executed October 3, 1933. It conveyed the Cooper home, a four room frame building, and some three or four acres of ground. The consideration was "$1.00, in hand and for nursing and waiting on her since she has been sick." The second deed was executed on September 17, 1934, and conveyed a tract of 50 acres some quarter of a mile from the Cooper home. The consideration in the second deed was "$500.00, in hand paid and nurse and care for us the re-mainder of our lives." Both of the deeds were written by a brother of Mrs. Cooper, who had the reputation of being a very able and successful business man. Elsie had nothing to do with the preparation of either deed. While it is charged that the mother was overreached and that she was in poor health for a number of years, there is no showing whatever that she was lacking in mental capacity, or that she was in any way overreached by her daughter when she made the conveyances. There is tes-timony that the mother had good business judgment and was able to transact her business up until the time of her death, even though in very poor health.

The principal question involved, therefore, concerns the mental condition of the father at the time he sign-ed the two deeds conveying Mrs. Cooper's property. See KRS 382.050 (KS 506). That Mr. Cooper was failing physically and mentally after 1932 or 1933 is quite clear. This is not to say, however, that it was shown that he lacked mental capacity to realize the sig-nificance of his acts. On the contrary there is evidence that he willingly joined in the conveyances and appre-ciated fully the tremendous burden carried by Elsie in caring for him and Mrs. Cooper. There is proof for the appellants that Mr. Cooper's mind was failing after 1932 or 1933; that frequently he would break down and cry; that it was hard for him to engage in conversation;

and that often he did not know persons who spoke to him. On the other hand there is Elsie's testimony that her father aways knew her and that he was very appreciative of what she did for him and her mother. Several persons who lived near the Coopers, and had known them for many years, said that Mr. Cooper always recognized them; that though he was failing both physically and mentally, he seemed to know what he was doing; and that he was very affectionate toward his wife and Elsie, and frequently shed tears.

If the evidence stopped here, there would be grave doubt as to whether we would be justified in disturbing the chancellor's ruling; but there is other evidence as to Mr. Cooper's mental condition in 1934 which removes any doubt entertained by us as to his capacity to join in the conveyances. Mr. Cooper owned a tract of some 65 acres of land, in addition to several lots in Barbourville. In the fall of 1934, some 40 days after the second deed was executed to Elsie, he conveyed his farm to Robert Eaton for $1100, $100 of which went to Ben Wynn, who negotiated the sale. Eaton said that before the deal was finally closed he talked with Mr. Cooper for an hour and a half or more and that he seemed to know what he was talking about. He said also that, if anyone questioned his transaction with Mr. Cooper, he would gladly reconvey the land if his money was returned. Ben Wynn said that he approached Mr. Cooper in the spring of 1934, with the view of trading other land to him for the tract purchased by Eaton, and that Mr. Cooper said that he did not care to make a trade because he owed some money which he desired to pay; that he also needed money on which to live; that he wanted $1,000 for the property; and that he would give Wynn all over that amount which he received for it. Other persons said that they never heard of Mr. Cooper making a bad trade. So it can be seen that we have evidence of a land trade extending over a period of several months in which not only was Mr. Cooper able to take part, but, apparently, in which he drove a good bargain. As we have noted, the deal was closed some 40 days after the second conveyance to Elsie, and negotiations concerning it began only a few months after the first conveyance. Mr. Cooper may have been failing physically and mentally as early as 1932 or 1933, but the Eaton transaction convinces us that he was well able to take care of his business affairs

as late as the latter part of 1934. Obviously, we are not concerned with the condition of his mind after the two conveyances to Elsie.

We deem it unnecessary to discuss the question as to whether the burden of proof was on Elsie or the other children, because, regardless of where it fell, we think the proof was conclusive in favor of Elsie. Nor is it necessary for us to discuss the question as to whether there must be as high a degree of mental capacity in a husband who joins in the conveyance of his wife's property as in the case where one conveys his own property, because we think Mr. Cooper had sufficient mental capacity to do either, and that he understood the nature and consequences of his acts and joined in the conveyances of his own free will. Clearly, Mrs. Cooper had a right to do with her property as she saw fit, since there is no showing whatever of a lack of mental capacity on her part to make the conveyances. As said in Tartar v. Eaton, 282 Ky. 219, 138 S. W. (2d) 342, the power of a court of equity to set aside an executed conveyance is an extraordinary one which should never be lightly exercised.

It follows from what has been said that it is our view that it was error for the chancellor to set aside the two conveyances to Elsie, and, therefore, we reverse the judgment, with directions that it be set aside and for proceedings consistent with this opinion in the final settlement of the two estates.